UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| KENNETH FERGUSON #297566 ) | |
| ) | |
| v. ) | NO. 2:04-CV-397 |
| ) | |
| RALPH WALKER, STEVE PAYNE, ) | |
| DEBBIE DUGGER, ERIC QUALLS, ) | |
| HOWARD CARLTON, and QUENTON ) | |
| WHITE ) | |

### **MEMORANDUM and ORDER**

Seeking monetary, declaratory, and injunctive relief, Kenneth Ferguson, an inmate in the Riverbend Maximum Security Institution who was formerly housed in the Northeast Correctional Complex (NECX) in Mountain City, Tennessee, brings this *pro se* civil rights action under 42 U.S.C. § 1983 against six defendants—all officials or employees of the Tennessee Department of Correction (TDOC).

The plaintiff is **ASSESSED** the full filing fee of two hundred, fifty dollars ($250.00). The custodian of the plaintiff's inmate trust account at the facility wherein he resides is required to submit to the Clerk of Court, as an initial partial filing fee, twenty percent (20%) of the greater of:

(1) the average monthly deposits to the plaintiff's account <u>or</u>

(2) the average monthly balance in his account for the 6-month period immediately preceding the filing of the complaint on October 28, 2004.

Thereafter, the custodian shall submit twenty percent (20%) of the plaintiff's preceding month's income (or income credited to his account for the preceding month) to the Clerk, but only when the monthly income exceeds ten dollars ($10.00), until the $250.00 filing fee has been paid in full.[1] 28 U.S.C. § 1915(a) and (b)(1) and (b)(2).

In his complaint, the plaintiff claims that, in June of 2004, he was found guilty of the disciplinary offense of participating in a security threat group (STG) activity, a Class A infraction. He contends that there was insufficient evidence to support that finding since it consisted only of a letter he had written and mailed to one LaDonte Smith, a former cell mate and confirmed STG member. The letter to Smith contained certain references, which were viewed by two disciplinary hearing board members as sufficient proof of the plaintiff's STG participation.[2] As a result

---

[1] Send the payments to:   Clerk, USDC
                            220 West Depot Street, Suite 200
                            Greeneville, TN 37743

[2] Only the two members who voted "guilty," Steve Payne and Debbie Dugger, have been named as defendants in this case.

of his disciplinary conviction, the plaintiff's security classification was increased and he was transferred to a maximum security institution in Nashville. The plaintiff has submitted documents showing that he has satisfied the requirements of 42 U.S.C. § 1997e(a), which provides that no action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

At the outset, the Court notes that the plaintiff, who is now imprisoned in a Nashville prison, could not obtain a benefit from the granting of injunctive or declaratory relief from the alleged wrongful conditions at the Mountain City prison because he is no longer housed there. Thus, all such claims are **MOOT**. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996).

The plaintiff's claims that disciplinary proceedings violated his Fourteenth Amendment rights to due process and equal protection of the law and his First Amendment right to freedom of expression will be addressed in that order.

1. **Due Process Claims**

Under TDOC Policy 502.05 (a copy of which is attached as an exhibit to the complaint), an inmate may be found guilty of participating in Security Threat Group Activities by organiz-

3

ing, promoting, encouraging, or directly participating in a security threat group or security threat group activity. The second page of the plaintiff's disciplinary report (also attached to the complaint) reflects that the finding of guilty rested upon certain references he made in the letter (to STG activities and to a second inmate who was an STG member) and misspellings of words (i.e., "smack" spelled as "smacc"). The misspellings were deemed to be significant because, supposedly, members affiliated with one particular gang will not use the letters "c" and "k" together. The contents of the letter comprised all the proof upon which rested the plaintiff's disciplinary conviction of participating in the security threat activity.

The plaintiff cites several alleged due process violations that occurred in connection with his disciplinary proceedings. The first alleged violation involves the method of determining gang membership or activity. He alleges that arbitrary factors (i.e., peer association; correspondence sent to inmates who are STG members about an STG activity; and the manner in which clothing is worn) are applied to make this determination. He further claims that the definition of the infraction is vague and overbroad. Such allegations, however, fail to state a claim because prison authorities have the discretion and to define and assign disciplinary offenses. *See Turney v. Scroggy*, 831 F.2d 135, 140 (6th Cir.1987).

4

He next contends that he was deprived of due process in that: (1) the evidence which was offered at his disciplinary hearing (that he had written a letter to a confirmed STG member about STG activities) was insufficient to convict him of the STG infraction (2) he received five days punitive segregation (suspended for thirty days), a five-dollar fee assessment, and a twelve-month package restriction, (3) his security level was increased from medium to close security, (4) he was transferred to a maximum security prison. He does not contend that any good-time credits were revoked as a result of the disciplinary proceedings,[3] though he does allege that he lost the chance to earn sentencing credits.

None of these allegations state a claim for relief under § 1983. A due process claim depends upon the existence of a constitutionally recognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The plaintiff has no inherent constitutional right to remain free of disciplinary confinement. *Sandin v. Conner*, 515 U.S. 472,

---

[3] Because the length of the plaintiff's sentence was unaffected by his disciplinary conviction, the allegations do not implicate the rule in *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) and *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), which requires a favorable termination of disciplinary proceedings as a prerequisite to bringing a § 1983 claim, but only where the duration of a prisoner's confinement is affected.

484-86 (1995). Nor does he have a right to a particular security level, *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976), or to placement in any particular prison. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983). A prisoner enjoys due process protections in being free from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. These alleged deprivations have not imposed restraints that rise to the level of due process violations because they did not impose an "atypical and significant hardship" on the plaintiff.

Finally, his due process rights are not implicated by his inability to earn sentence credits because of the change in his security status. The loss of an opportunity for earning sentencing credits is a speculative, collateral consequence of a prison disciplinary conviction and, thus, is not sufficient to create a liberty interest. *See Luken v. Scott*, 71 F.3d 192, 193-94 (5th Cir.1995).

2. **Equal Protection Claims**

Next, the plaintiff claims that his disciplinary write-up and subsequent conviction at NECC, where the majority of inmates are white, were racially motivated and denied him equal protection. This is so, he asserts, because young African-American inmates, such as he, are stereotyped and labeled as gang

6

members. The plaintiff alleges that young black inmates at NECC are systematically discriminated against as gang members by defendants Ralph Walker, Steve Payne and Howard Carlton. To illustrate the purported discrimination, he contends that a young black male who even associates with another black male inmate is subject to disciplinary action, STG designation and placement in the maximum security area of NECX or transferred to a maximum security prison, whereas white inmates who have white supremacist tattoos or wear racial insignia are not disciplined or designated as STG members. He does not identify any young black male whose mere association with another black inmate has subjected him to unequal treatment.

To assert a Fourteenth Amendment equal protection claim, a plaintiff must prove that a state actor purposefully discriminated against him because of his membership in a protected class. *McCleskey v. Kemp*, 481 U.S. 279 (1987). Generally, equal protection under the law means that similarly situated persons must not be treated differently. *See Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089, 1094 (8th Cir. 2004) ("For any equal protection claim, the threshold inquiry is whether the [claimant] is similarly situated to others who allegedly received preferential treatment.") (internal citation marks omitted).

Here, while the plaintiff is a member of a protected class, he has not shown

7

any purposeful discrimination. Although he alleges that white inmates with white supremacist tattoos are not designated as gang members, he does not allege that black inmates who have similar racist tattoos *are* designated as gang members. Moreover, the distinctions drawn by the plaintiff between black inmates and white inmates are like comparing apples to oranges. Tattoos and racial insignia relate to physical appearance; writing letters relates to conduct. Put simply, the plaintiff's conclusory allegations do not show that black inmates who write letters concerning STG activity to identified STG members are treated differently than similarly situated white inmates who engage in the same behavior.

3. **First Amendment Claims**

Finally, the plaintiff suggests that punishing him simply for writing a letter to another inmate violates his First Amendment rights. He claims further that there is nothing in TDOC policy which prohibits inmate-to-inmate correspondence.

It is well established that constitutional protections do not end at the prison door. *Turner v. Safley*, 482 U.S. 78, 84 (1987). However, "many liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).

The plaintiff's own allegations defeat his First Amendment claims since he

8

contends that he was punished based on the subject matter of the letter sent to a confirmed STG member, *not* on the mere fact that he wrote a letter to an inmate. However, the Court notes that prison regulations which prohibit inmates from writing other inmates has been upheld as constitutional. *See Turner*, 482 U.S. at 93 (upholding ban on inmate-to-inmate correspondence and rejecting alternative of officials monitoring mail because inmates could easily resort to use of codes to prevent detection of their real messages). These allegations do not state a claim either. *Cf. Leon v. Terhune*, 54 Fed.Appx. 254, 255, 2002 WL 31780086, *1 (9th Cir. Dec. 2, 2002) (no First Amendment violation where inmate designated as a prison gang associate based on evidence of his association with gang member and possession of newspaper articles on Mexican Mafia).

    Accordingly, a separate order will enter, dismissing this complaint for failure to state a claim. 28 U.S.C. § 1915(e)(2) and § 1915A.

    ENTER:

                                                s/Thomas Gray Hull
                                              THOMAS GRAY HULL
                                                 SENIOR U. S. DISTRICT JUDGE